FILED
SUPERIOR COURT
OF GUAM

2018 FEB -9 PM 3: 36

CLERK OF COURT
BY:_____

**IN THE SUPERIOR COURT OF GUAM**

|  |  |  |
|---|---|---|
| HARGOPAL S. SACHDEV, | ) | Civil Case No. CV0626-11 |
| | ) | |
| Plaintiff, | ) | **REFEREE'S DECISION AND** |
| | ) | **RECOMMENDATION ON** |
| vs. | ) | **PLAINTIFF'S REQUEST FOR** |
| | ) | **ORDER TO SHOW CAUSE** |
| AMARJIT S. SACHDEV, PICHET | ) | |
| SACHDEJ, PAUL'S (GUAM), INC., and | ) | |
| JPR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**INTRODUCTION**

This matter came before Alberto E. Tolentino, Referee, on Plaintiff's Request for Order to Show Cause that was filed on December 4, 2017. Plaintiff was represented by attorney Daniel J. Berman. Defendants, by and through their attorney Jon R. Ramos, filed their opposition to the request on December 18, 2017. Plaintiff filed his reply on January 8, 2018. On January 11, 2018, oral argument on the request was received by the Referee. The Referee having considered the parties' arguments, briefs, the court's file, and the applicable law now issues the following Decision and Recommendation.

**BACKGROUND**

This matter arose from a complaint that was filed on April 6, 2011, by Plaintiff, Hargopal Sachdev ("Roger") against his brothers Amarjit Sachdev ("Jim") and Pichet Sachdej ("Paul") and the two corporate defendants Paul's (Guam), Inc. and JPR, Inc. which alleged a number of causes of action. *See* Compl. (Apr. 6, 2011). As the case was proceeding, the parties filed a Joint

Motion to Stay Litigation Pending Arbitration and a Joint Submission of Revised Order Staying Litigation Pending Arbitration on October 11 and November 7, 2012, respectively. The trial court ordered the matter stayed pending the completion of arbitration. *See* Order (Feb. 15, 2013).

On May 1, 2017, Roger filed a Petition to Confirm Arbitration Awards. According to the petition, between October 10, 2012 and March 20, 2017, the parties had engaged in both formal arbitration and mediation proceedings wherein witnesses were called and evidence was presented. *See* Pet. at p.2 (May 1, 2017). On March 19, 2014, the arbitrator rendered his provisional arbitration award in writing. *Id.* The arbitrator had also rendered a subsequent arbitration award and a final supplemental arbitration award on April 25, 2015, and March 20, 2017, respectively. *Id.* The petition alleged the failure of the Defendants to make payment and perform the requirements set forth in the Supplemental Arbitration Award. *Id.* Roger thus requested for an Order confirming the Arbitrator's supplemental arbitration award and for the "entry of Judgment in conformity therewith." *Id.* at p.3.

On May 30, 2017, Defendants filed a non-opposition to the petition to confirm the arbitration awards and also requested for a continuance of the hearing on the petition in order to complete settlement negotiations. Plaintiff replied with his opposition to continue the hearing and also included a proposed final judgment for the trial court's review and approval.

On June 16, 2017, at the hearing before the trial court on the petition to confirm arbitration awards Defendants again requested for additional time. It appears that the trial court denied the request for more time and subsequently executed the proposed final judgment submitted by the Plaintiff on June 21, 2017. That judgment was entered on the docket on June 28, 2017.

The case was transferred to the Superior Court of Guam's Master Case Calendar ("MCC") on June 29, 2017. The Magistrate Judge is empowered to "preside over post-judgment

collection proceedings in civil cases." *See* 7 GCA §4401(c)(3) (2015). The undersigned was appointed as Referee in the civil collection docket to hear these cases and make recommendations to the Magistrate Judge, as necessary.

Roger filed the instant Request for Order to Show Cause and Order to Show Cause alleging that the Defendants failed their duty under the judgment to "make a contribution of $100,000.00 to a licensed tax-exempt charity on the name of Teja Singh Sachdev, and shall provide proof of such contribution to Plaintiff." Decl. and Request for Order to Show Cause; and Order to Show Cause at p.1 (Dec. 4, 2017). He complains that instead of a money contribution of $100,000.00 to a charity the Defendants delivered various school uniforms which they claimed had a value of that amount to a private school in the name of Teja Singh Sachdev. *Id.* at pp. 2-3. Defendants respond that they have fully complied with the final judgment by making a charitable contribution of school uniforms to St. John's School with a value of $100,000 and giving proof to Plaintiff that such donation had been made. *See* Defendants' Resp. to Plaintiff's Req. for Order to Show Cause (Dec. 18, 2017). The Defendants assert that the judgment did not specify that the required charitable contribution must be a cash contribution. *Id.* at p.4. Further, they argue that Plaintiff's valuation of its contribution was without merit. *Id.* They point out that St. John's School conducted an independent calculation of the value of their charitable contribution and concluded that the donation will provide the school over $100,000. *Id.* at p.5.

## DISCUSSION

"The following acts or omissions are contempt of court: ... Disobedience of any lawful judgment, order, or process of the court ..." 7 GCA § 34101(a)(5)(2005). If a judgment directs a party to perform a specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party. *See* Guam R. Civ. P. 70 (2014). The court may also in proper cases adjudge the party in contempt. *Id.* The elements of contempt

are generally: "1) a valid order, 2) knowledge of the order, 3) ability to comply with the order, and 4) willful failure to comply with the order." *Rodriguez v. Rodriguez*, 2003 Guam 8 ¶15 (citation omitted)(*overruled on other grounds* in *Paguio v. Paguio*, 2014 Guam 36 ¶15 ("We now overrule *Rodriguez* to the extent that we find section 25102(a) denies this court jurisdiction over appeals of contempt orders.")).

## A VALID ORDER AND KNOWLEDGE THEREOF

Neither party has questioned the validity of the Judgment in this case. The Judgment was entered by the trial court upon Plaintiff's Motion to Confirm Arbitration Awards and upon Defendants' Non-Opposition to the petition and after a hearing on the Petition on June 16, 2017. *See* Judgment (Jun. 28, 2017). For the same reasons, neither do the parties deny knowledge of the Judgment and its obligations. Plaintiff submitted the proposed judgment which was adopted by the court. Defendants, in their responsive pleading, acknowledged the pertinent obligations of the judgment. *See* Non-Opp. and Mot'n to Continue Hearing to Allow for Settlement Negotiations (May 30, 2017).

## ABILITY TO COMPLY WITH THE ORDER

Nothing was presented at the hearing on the request for an order to show cause that indicated Defendants were not able to comply with the order. What is at issue is the Defendants' compliance or non-compliance with a specific provision of the Judgment as discussed below.

## WILLFUL FAILURE TO COMPLY WITH THE ORDER

The specific provision of the judgment at issue stated: "Defendants shall make a contribution of $100,000.00 to a licensed tax-exempt charity in the name of Teja Sigh Sachdev, and shall provide proof of such contribution to Plaintiff." Judgment at ¶ 3. Plaintiff argues that the provision is un-ambiguous and that it was the duty of the Defendants to make a contribution of $100,000.00 to a licensed tax-exempt charity. On the other hand, Defendants have countered

that nothing in the judgment indicated that a charitable contribution of the value of $100,000.00 could not have been made in the manner in which it was done. Furthermore, the Defendants assert that the value of the uniforms they donated to St. John's School was in excess of $100,000. Plaintiff responds that the alleged value of the donation was derived from a self-serving declaration of value by the Defendants and that Roger, who has been in the business of retail sale of uniforms for public and private schools, estimated a much lower valuation of the donated uniforms.

In *Lamb v. Hoffman*, 2008 Guam 2, the Guam Supreme Court affirmed the lower court's determination that the appellant was in contempt for his willful failure to provide spousal support. *Lamb v. Hoffman*, 2008 Guam 2. The parties were involved in contentious divorce proceedings that originated in the Canadian courts wherein the judge ordered that appellant pay to appellee C$2,391 per month in child support and C$10,000 per month in spousal support. *Id.* at ¶2. The spousal support was to continue until such time the appellee received her share of the division of matrimonial property. *Id.* The Canadian judge also ordered the transfer of certain shares of stock the purpose of which was not entirely clear. Appellant moved to Guam and appellee followed him here and sought to enforce the child and spousal support orders against the appellant. Appellant had argued that he believed the orders pertaining to the transfer of the shares of stock were to be used as a fund to pay his support obligations. *Id.* at ¶6. The court below affirmed the child support referee's finding that the appellant was in contempt of court for failing to pay child and spousal support and that the transfer of the shares of stock were part of the appellee's share of matrimonial assets. The Supreme Court observed that:

> When a support order might be interpreted in multiple ways, courts must consider whether a party's interpretation rises to the level of "willful failure to comply with the order. *Rodriguez*, 2003 Guam 8 ¶ 15. In *Sablosky v. Sablosky*, the Connecticut Supreme Court found the defendant to be in contempt for failing to pay a portion of his children's college tuition even though the phrase "undergraduate college student" was ambiguous. 784 A.2d 890,892-93 (Conn. 2001). The court

concluded that "an ambiguity in the terms of a judgment does not, as a matter of law, preclude a finding of contempt for the wilful failure to comply with the judgment." *Id.* This is particularly true where a party uses an ambiguity as an excuse for entirely ignoring their support obligations. *Ex parte Acker*, 949 S.W.2d 3 14,3 19 (Tex. 1997). The policy reason that contempt can sometimes be appropriate in such cases is that parties should be encouraged to petition the court to clarify any ambiguities rather than resort to self help. *Sablosky*, 784 A.2d at 896. On the other hand, a good faith belief that a party's interpretation of the support order is correct may prevent a finding of wilfulness for purposes of establishing contempt. *Id.* at 894; *see also Blackwell v. Fulgum*, 652 S.E.2d 427,430-3 1 (S.C. Ct. App. 2007) (finding that ex-wife was not in contempt was appropriate where she had a good faith belief that her support payments should be reduced upon the emancipation of her daughter); *Riddick v. Riddick*, 906 So. 2d 813,826 (Miss. Ct. App. 2004) (ex-husband's good faith belief that he could delay tuition payments until the court clarified his obligations in light of his ex-wife's breach of the marital agreement prevented a finding of contempt).

*Id.* at ¶52.

The Court agreed that appellant had a good faith argument to believe that the liquidation of assets would be credited to his support obligations although the extent of which could not be determined on the basis of the record before it. *Id.* at ¶51. The Court found that it was error for the court below to find appellant in contempt for his failure to pay child support because he continued to tender checks for child support even after applying the liquidation proceeds as a credit to his child support obligation. *Id.* at ¶53. However, the Court also found that that there was no dispute that the appellee had not received her entire share of the matrimonial assets and as such, the order of spousal support was still in effect and appellant showed no good faith argument as to why he failed to meet his spousal support payments even after the credit. *Id.* at ¶¶55-56.

In this case, the provision at issue in the Judgment had appeared and had been ordered in the arbitration awards in one iteration or another. *See* Petition (May 1, 2017). For example, the court file indicates that according to the arbitrator, the parties had engaged in mediation in August 2012 wherein they agreed that "Jim was to make a $100,000 donation to a charity in the name of Teja Sachdev." *Id.* at Exhibit "B" ((Provisional) Arbitration Award at p.3 (Mar. 19,

2014)). Then, after deciding on the division of several properties at issue, the arbitrator again ordered in his award that "[p]ursuant to the 2012 Agreement, within sixty days of Closing, Jim and Paul shall personally make a contribution to a licensed tax exempt charity in the name of Teja Singh Sachdev, and shall provide proof of such payment to Roger." *Id.* at p.10. After the issuance of the provisional arbitration award, the parties had the opportunity to make or raise objections they may have had. This resulted in the issuance of the subsequent final arbitration award. *Id.* at Exhibit "C" (Arbitration Award (Apr. 24, 2015)).There, the arbitrator again stated that "[p]ursuant to the 2012 Agreement, within sixty days of Closing, Jim and Paul shall personally make a contribution of $100,000 to a licensed tax exempt charity in the name of Teja Singh Sachdev, and shall provide proof of such payment to Roger." *Id.* at p.13. A supplemental arbitration award was issued by the arbitrator that ostensibly resolved some outstanding issues between the parties. *Id.* at Exhibit "D" (Supplemental Arbitration Award (Mar. 20, 2017)). It was provided as follows: "Pursuant to the 2012 Agreement, within ninety days of Closing, Jim and Paul collectively shall make a **contribution of $100,000 to a licensed tax exempt charity** in the name of Teja Singh Sachdev, and shall provide proof of such payment to Roger." *Id.* at p. 7. (emphasis in original). The combined use of the words "contribution" and "payment" tend to reasonably indicate, as advocated by the Plaintiff, that money in the amount of $100,000 was what was contemplated to be paid to a charity.

What has complicated matters is that Plaintiff submitted a proposed judgment, which was eventually executed by the court, which could have and should have been more accurate and consistent with the award made by the arbitrator. It was not. Rather than unambiguously stating, as the awards made clear, that Jim and Paul shall make a *contribution of $100,000* to a licensed tax exempt charity in the name of Teja Singh Sachdev and shall provide proof of such *payment*

to Roger; the Plaintiff's proffer of the language in the judgment made it more ambiguous than it had to be. Neither party has filed a motion to clarify the judgment.

Thus, the question is whether the Defendants had a good faith belief that their interpretation that the obligation under the Judgment could be discharged by the delivery of $100,000.00 worth of uniforms to St. John's School.

The requirement of a contribution was affirmed by the Defendants themselves in their Non-Opposition to Petition to Confirm Arbitration Awards which was articulated as follows: "Defendants agree to make a charitable contribution of the value of One Hundred Thousand Dollars ($100,000.00) to a Guam charity within six months of the date of an Order and Judgment rendered from this Court ..." *See* Non-Opp'n. at p.2 (May 30, 2017). A fair reading of this proposed interpretation of the arbitration awards and the resulting judgment appears to indicate that a contribution other than money may satisfy the Defendants' obligation. However, as discussed above, it is qualitatively different from the consistent descriptions of the obligation as made by the arbitrator in his arbitration awards.

It seems clear to the Referee that the charitable contribution required of the Defendants was a money donation of $100,000. Each of the arbitration awards required that Jim "make a $100,000 donation to a charity" then that "Jim and Paul shall personally make a contribution to a licensed tax exempt charity ... and shall provide proof of such payment" then that "Jim and Paul shall personally make a contribution of $100,000 to a licensed tax exempt charity ... and shall provide proof of such payment to Roger" and finally that "Jim and Paul collectively shall make a contribution of $100,000 to a licensed tax exempt charity ... and shall provide proof of such payment to Roger." Defendants' interpretation that a "charitable donation *of the value of* $100,000 to a Guam charity" was required does not square with tautology used in the arbitration awards.

Thus, the Referee finds that the judgment in this case required the Defendants to make a money contribution of $100,000 to a tax exempt charity in the name of Teja Singh Sachdev and to provide proof that the payment was made to the Plaintiff. The Defendants' interpretation of the judgment, to wit: that another form of charitable contribution could be made so long as it had a value of $100,000, was not in good faith because it was inconsistent with the arbitration awards that were ordered by the arbitrator and upon which the Judgment was issued.

## RECOMMENDATION

Based on the foregoing, the Referee recommends to the Magistrate Judge that the Defendants be found in contempt for` willfully failing to comply with the terms of the Judgment. The Referee also recommends that further proceedings be scheduled to determine whether and to what extent Defendants should be given credit for the property it had delivered to St. John's School.

SO ORDERED this _____ day of _____**FEB 0 9 2018**_____, 2017.



HONORABLE ALBERTO E. TOLENTINO
Referee,
SUPERIOR COURT OF GUAM

D. Berman: Christine on 2/9/18 @ 3:45 pm
J. Ramos: Nancy on 2/9/18 @ 3:50 pm